## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PLANNED PARETHOOD SOUTHWEST OHIO REGION, *et al.*, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 1:21-CV-00189-MRB |
| | : | |
| v. | : | JUDGE MICHAEL R. BARRETT |
| | : | |
| OHIO DEPARTMENT OF HEALTH, *et al.,* | : | |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS OHIO DEPARMENT OF HEALTH, DIRECTOR STEPHANIE MCCLOUD, AND STATE MEDICAL BOARD OF OHIO'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Emily Pelphrey*
EMILY PELPHREY (0077482)
ANDREW D. MCCARTNEY (0099853)*
    *Pro hac vice motion pending*
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Emily.Pelphrey@OhioAttorneyGeneral.gov
Andrew.McCartney@OhioAttorneyGeneral.gov

*Counsel for Defendants Ohio Department of Health, Stephanie McCloud, Director of Ohio Department of Health, and State Medical Board of Ohio*

## INTRODUCTION

This case is not about access to abortion.  It is about Senate Bill 27 ("S.B. 27"), the State of Ohio's law providing for the disposition of fetal remains.  The law goes into effect on April 6, 2021, and it gives the Director of the Ohio Department of Health three months from April 6 to develop and adopt rules necessary to implement the statute.  The plaintiffs (several Ohio providers of abortion, hereinafter, "the Clinics") allege that they fear being held civilly liable during the interim period after the effective date of the statute and before final rules (including rules prescribing various forms) are adopted.  That fear is groundless—and fails as a matter of law.

On the merits, the Clinics throw punches at a straw man.  Their entire case rests on the incorrect assumption that they will be forced to stop all procedural abortions on April 6, 2021.  Their Motion for Temporary Restraining Order Followed by Preliminary Injunction ("Motion") repeatedly characterizes Ohio's fetal-remains statute as a "ban on all procedural abortions in Ohio." *See, e.g.*, Doc. No. 1-1, Mot., PageID# 68.  Far from it.  S.B. 27 does not ban any abortions; it provides for the treatment of fetal remains.  As such, there is no fundamental right at issue.  The United States Supreme Court has already upheld a state fetal-remains law similar to Ohio's, reiterating that "a State has a legitimate interest in proper disposal of fetal remains."  *Box v. Planned Parenthood of Indiana & Kentucky, Inc.*, 139 S. Ct. 1780, 1782 (2019) (per curiam) (internal quotations omitted).  As to any alleged injury, the Clinics' case amounts to anxiety over not receiving forms and rules in advance of S.B. 27's effective date.  The Clinics can demonstrate no harm at all—let alone irreparable harm—from this alleged subjective fear.  The Clinics' Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Ohio Enacts S.B. 27 To Provide for the Disposition of Fetal Remains.**

On December 30, 2020, Governor DeWine signed into law Am. S.B. No. 27, 2020, Ohio Laws File 77 ("S.B. 27"). S.B. 27's effective date is April 6, 2021.[1] On its face, the new statute governs "the final disposition of fetal remains from surgical abortions." Doc. No. 1-1, S.B. 27, at PageID# 43. S.B. 27 therefore provides that "[f]inal disposition of fetal remains from a surgical abortion at an abortion facility shall be by cremation or interment." Ohio Rev. Code § 3726.02(A). Under S.B. 27, any woman who obtains an abortion in Ohio must be informed prior to the procedure that she can choose the final disposition of the fetal remains. *Id.* § 3726.03(B). S.B. 27 gives the pregnant woman the right, if she so chooses, to determine both the manner and location of final disposition. *Id.* § 3726.03(A). However, S.B. 27 does not require the woman to make either of these determinations. *Id.* A woman undergoing an abortion is not required to cover any costs of final disposition unless she identifies a location for final disposition other than one provided by the abortion facility. *Id.* § 3726.09.

S.B. 27 sets forth certain rule-making steps and timelines for the Department of Health once the statute goes into effect on April 6, 2021. Section 3726.14 specifically provides that "[n]ot later than ninety days after the effective date of this section, the director of health, in accordance with Chapter 119[] of the Revised Code, shall adopt rules necessary to carry out sections 3726.01 to 3726.13 of the Revised Code[.]" These rules to be adopted by the Department of Health "includ[e] rules that prescribe" three forms: (A) a "notification form" informing women who seek surgical abortions of their rights regarding final disposition; (B) a "consent form"; and (C) a "detachable supplemental form" that, among other things, indicates whether the woman has

---

[1] The Ohio Legislature, Senate Bill 27, Status, https://www.legislature.ohio.gov/legislation/legislation-status?id=GA133-SB-27.

indicated a preference regarding final disposition. *Id.* § 3726.14(A)-(C). S.B. 27 also provides that the detachable supplemental form may be completed after a medical emergency should a medical emergency arise. *Id.* § 3726.14(C)(2).

Because the rules necessary to implement S.B. 27 and prescribe the forms discussed above must be adopted "in accordance with Chapter 119[] of the Revised Code," the adoption of final rules could generally occur no earlier than 65 days after proposed rules are filed pursuant to Chapter 119.03. Ohio Rev. Code § 119.03(B); *see also* Mot. at PageID# 59 n.2.

Under S.B. 27, cremation of fetal remains is to occur in a crematory facility in compliance with Chapter 4717 of the Revised Code. Ohio Rev. Code § 3726.02(B). S.B. 27 provides that "[a] person who buries or cremates fetal remains from a surgical abortion is not liable for or subject to damages in any civil action, prosecution in any criminal proceeding, or professional disciplinary action related to the disposal of fetal remains," so long as that person acts in "good faith compliance" with the statute, receives a copy of a properly executed detachable supplemental form, and "[a]cts in furtherance of the final disposition of the fetal remains." *Id.* § 3726.15. A crematory operator is not required to secure a death certificate, a burial or burial-transit permit, or a cremation authorization form to cremate fetal remains. Ohio Rev. Code § 4717.271(B).

## II. The Clinics File Requests for Emergency Relief in Advance of S.B. 27's Effective Date, But Their Motion for a Temporary Restraining Order Is Denied.

On March 9, 2021, the Clinics simultaneously filed their Complaint and a Motion for Temporary Restraining Order Followed by Preliminary Injunction ("Motion") in the Court of Common Pleas for Hamilton County, Ohio. The Complaint names as defendants the Ohio Department of Health; Stephanie McCloud, Director of the Ohio Department of Health; and the State Medical Board of Ohio ("the State Defendants"). The Complaint also names a number of nominal non-state defendants. In their Complaint, the Clinics requested "a temporary restraining

order followed by a preliminary injunction, and later a permanent injunction, restraining Defendants, their employees, agents, and successors in office from enforcing SB27." Doc. No. 1-1, Compl., PageID# 38. The Clinics' Motion sought a temporary restraining order followed by preliminary injunction enjoining Defendants from enforcing S.B. 27 "until such reasonable time after Defendant Ohio Department of Health ('ODH') issues rules, including those prescribing the necessary forms, as required by SB27, so that Plaintiffs are able to determine whether and how they can comply with the law." Mot. at PageID# 56.

The Clinics' Complaint brings claims for alleged violations of substantive due process, procedural due process, and equal protection (among other things), and their simultaneously filed Motion relies heavily on alleged violations of *federal* law—while purporting to raise claims under only Ohio law. *See* Mot. at PageID## 72-85. Specifically, the Clinics' Motion relies almost exclusively on federal cases applying the Fourteenth Amendment to the United States Constitution, citing to numerous United States Supreme Court cases as well as many federal circuit court cases relying on the federal Constitution. *See id.*

On March 11, 2021, the Hamilton County Court of Common Pleas held a hearing on the Clinics' request for a temporary restraining order. Following oral argument and consideration of the parties' positions, the court denied the Clinics' request for a temporary restraining order. Doc. No. 1-1, Order Denying TRO, PageID# 214. On March 18, 2021, the State Defendants removed the case to this Court on the basis of federal question jurisdiction. Doc. No. 1.

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The movant "bears the burden of justifying such relief," and it is "never awarded as of right." *ACLU Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642

(6th Cir. 2015). Indeed, "the proof required is much more stringent than the proof required to survive a summary judgment motion." *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014) (internal quotations and alternation omitted). When determining whether to grant a party's request for such a remedy, district courts must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotations omitted). "When one factor is dispositive, a district court need not consider the others." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019).

## ARGUMENT

### I. The Clinics Have No Likelihood of Success on the Merits at All.

To be entitled to a preliminary injunction, the Clinics must demonstrate that they have a *strong* likelihood of success on the merits of their claims. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012). A mere "possib[ility]" of success does not suffice. *Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Without this showing, the Clinics' request fails—and this Court need not even consider the remaining elements of a preliminary injunction. *D.T.*, 942 F.3d at 327. Here, the Clinics have not made and cannot make a "clear showing" that they are likely to succeed on the merits of their claims *at all*—let alone with a *strong* likelihood of success.

***First***, the Clinics' Motion purports to assert claims under only Ohio constitutional provisions, but it relies almost exclusively on federal law. In addition, the Motion fails to mention case law from state and federal court holding that Sections 1 and 16 of Article I of the Ohio Constitution—the provisions under which the Clinics purport to sue—are not self-executing and

therefore do not provide a private cause of action for the Clinics' claims.  The Clinics' case is a federal one, which is why the State Defendants have removed to this Court.

**Second**, the Clinics cannot show that S.B. 27 violates any alleged substantive due process rights of their patients.  The Court need not even reach the constitutional issue here because this is a straightforward case of statutory interpretation.  The Clinics are simply wrong about S.B. 27. S.B. 27 is not a "ban on all procedural abortions in Ohio" as the Clinics contend; it is a fetal-remains statute.  Mot. at PageID# 68.  But even addressing the constitutional issue of substantive due process, S.B. 27 is not about access to abortion, and no fundamental right is at issue.  What is at issue is whether a state statute providing for the cremation or burial of fetal remains is rationally related to a legitimate state interest.  The U.S. Supreme Court has already answered that question in *Box v. Planned Parenthood of Indiana & Kentucky, Inc.*, 139 S. Ct. 1780 (2019) (per curiam), where the Court upheld Indiana's fetal-remains law.  Tellingly, although the Clinics cite almost exclusively federal law, they fail to even mention this dispositive decision.

**Third**, the Clinics cannot show that S.B. 27 violates their own alleged rights in operating their businesses.  Foremost, S.B. 27 does not ban all procedural abortions, and the Clinics' fear that it does or will misreads the statute's plain text.  Moreover, on-point Sixth Circuit authority (which the Motion acknowledges in a footnote) holds that the Clinics lack a "freestanding constitutional right to practice their trade."  *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 913 (6th Cir. 2019).  The Clinics challenge S.B. 27's effect on them under rational-basis review—as they must—but the U.S. Supreme Court's holding in *Box* terminates this argument.  A State has a "legitimate interest in proper disposal of fetal remains," so the Clinics' business-related due process argument fails.  *Box*, 139 S. Ct. at 1782.

***Finally***, the Clinics' procedural due process claim fails immediately. The Clinics have no protected property or liberty interest in obtaining subjective assurance as to how future rules implementing a not-yet-effective statute will affect their business operations. S.B. 27 has not deprived the Clinics of anything.

> **A.** **The state constitutional provisions under which the Clinics purport to sue do not provide a private cause of action, which is further proof that this case is about federal law and belongs in federal court.**

The Clinics assert that Article I, Section 16 of the Ohio Constitution "affords both procedural and substantive due process protections." Mot. at PageID# 71. However, this assertion does not square with the case law. The Ohio Supreme Court has held that a provision of the Ohio Constitution creates a private cause of action only if it is self-executing. *See Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992) (finding no private constitutional remedy where the Ohio Constitution did not provide for a civil damages remedy). "A constitutional provision is self-executing when it is complete in itself and becomes operative without the aid of supplemental or enabling legislation." *State v. Williams*, 728 N.E.2d 342, 352 (Ohio 2000).

The case law is clear: "*Section 16 of Article I of the state Constitution is not self-executing* and, in the absence of enabling legislation, suit may not be brought against the state." *State ex rel. Williams v. Glander*, 74 N.E.2d 82, 84 (Ohio 1947) (emphasis added); *see also Krause, Admr., v. State*, 285 N.E.2d 736, 743 (Ohio 1972), *overruled on other grounds*; *Wiesenthal v. Wickersham*, 28 N.E.2d 512, 513 (Ohio Ct. App. 10th Dist. 1940) ("The Supreme Court of the state of Ohio has definitely determined that [Article I, Section 16] of the Constitution is not self-executing."). Thus, "Ohio courts, in reviewing [Article I, Section 16], have consistently found that it is not self-executing and, therefore, does not create a private course of action." *Calvey v. Vill. of Walton*

*Hills*, No. 1:18 CV 2938, 2020 U.S. Dist. LEXIS 6499, at *27-28 (N.D. Ohio Jan. 15, 2020) (applying state-court precedent to hold that Article I, Section 16 does not create a private cause of action and therefore dismissing plaintiff's state constitutional claims).[2]

Moreover, federal district courts within the Sixth Circuit have determined that "Ohio law does not authorize private suits for violations of the Ohio Constitution." *Moore v. City of Cleveland*, 388 F. Supp. 3d 908, 919 (N.D. Ohio May 21, 2019); *see also, e.g.*, *Calvey*, 2020 U.S. Dist. LEXIS 6499, at *27-28; *Gibson v. Mechanicsburg Police Department*, 2017 U.S. Dist. LEXIS 85176, 2017 WL 2418317, *5 (S.D. Ohio June 2, 2017).

The Clinics' Motion conveniently elides this enormous body of case law. Under this clear precedent, Article I, Section 16 of the Ohio Constitution does not provide a private cause of action under which the Clinics can sue. The Clinics' almost exclusive reliance on federal case law for their substantive due process and procedural due process claims underscores the fact that this case is about *federal* constitutional law.[3]

The Clinics do not really allege a claim under Article I, Section 1 of the Ohio Constitution. Instead, they appear to rely exclusively on Article I, Section 16 as providing substantive and procedural due process rights that "include[e]" the substance of Article I, Section 1. Mot. at

---

[2] Specifically, case law from at least the First, Fifth, Sixth, Eighth, and Tenth Ohio appellate districts holds that Article I, Section 16 is not self-executing and therefore does not provide a private cause of action to plaintiffs. *See, e.g.*, *Riley v. Stephens*, No. CA 31, 1975 Ohio App. LEXIS 7284, at *4 (Ohio Ct. App. 1st Dist. Ct. App. Sept. 15, 1975); *Autumn Care Ctr., Inc. v. Todd*, 22 N.E.3d 1105, 1109 (Ohio. Ct. App. 5th Dist. 2014); *Beck v. Adam Wholesalers of Toledo, Inc.*, Court of Appeals No. S-99-018, 2000 Ohio App. LEXIS 2328, at *11-12 (Ohio Ct. App. 6th Dist. June 2, 2000); *PDU, Inc. v. City of Cleveland*, 2003-Ohio-3671, ¶ 21 (Ohio Ct. App. 8th Dist. 2003) ("The language of Article I, Sections 2, 11, and 16 is not sufficiently precise to provide clear guidance to the courts with respect to enforcement of its terms or application of its provisions"); *Estate of Tokes v. Dept. of Rehabilitation and Corr.*, 135 N.E.3d 1200, 1207 (Ohio Ct. App. 10th Dist. 2019) (holding, in light of the "clear pronouncement" from the Ohio Supreme Court, that "Section 16 is not self-executing under its own plain language").

[3] The Clinics cite one case for the proposition that Ohio is "'joining the growing trend in other states' and relying on the state constitution 'when examining personal rights and liberties.'" Mot. at PageID# 72 (citing *Arnold v. City of Cleveland*, 616 N.E.2d 163, 169 (Ohio 1993)). But *Arnold* does not involve or discuss Article I, Section 16, but instead principally involves Article I, Section 4 (concerning the right to bear arms in Ohio). *See Arnold*, 616 N.E.2d at 169-71. *Arnold* does not disturb—or even discuss—on-point precedent holding that Article I, *Section 16* is not self-executing and therefore does not provide the Clinics with a state-law cause of action.

PageID# 71.  As discussed above, the Clinics cannot assert a claim against the State Defendants under Section 16.  And to the extent the Clinics intend to assert a claim under Section 1, that claim would similarly fail.  The Ohio Supreme Court has held that Article I, Section 1—like Section 16—is not self-executing.  *Williams*, 728 N.E.2d at 354 ("It is the absence of a precise standard subject to judicial enforcement that precludes Section 1, Article I from being a self-executing provision.").

The Clinics are essentially attempting to cram federal claims into inappropriate state constitutional vehicles—perhaps to avoid recent, on-point case law from the U.S. Supreme Court upholding a state fetal-remains law.  *See Box*, 139 S. Ct. at 1782.  This the Clinics cannot do.  The Clinics argue almost exclusively federal law, so they must address *Box*—as well as accept that the state constitutional vehicles under which they purport to bring their claims do not create private causes of action on which they can sue the State Defendants.

**B.      The Clinics have not shown that S.B. 27 impairs the alleged substantive due process rights of their patients.**

***1.      This Court need not even reach any constitutional question because S.B. 27's plain text does not operate as a ban on procedural abortions.***

The Clinics' constitutional challenge fails—but this Court need not even reach any question of constitutional substantive due process.   "Courts should avoid unnecessary constitutional questions."  *United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002); *see also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 206 (2009) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."); *Bowman v. Tenn. Valley Auth.*, 744 F.2d 1207, 1211 (6th Cir. 1984) ("[W]e follow the longstanding practice of the Supreme Court . . . [in declining] to decide questions of

a constitutional nature unless absolutely necessary to a decision of the case." (quotations and citation omitted)); *Tower Realty v. City of East Detroit*, 196 F.2d 710, 724 (6th Cir. 1952) ("It is the duty of federal courts to avoid the unnecessary decision of the constitutional questions.").

This Court need not decide any constitutional question here. This is a straightforward case of statutory interpretation, and under its plain terms, S.B. 27 does not operate as a "ban on all procedural abortions in Ohio," as the Clinics oddly assert. Mot. at PageID# 68. S.B. 27 is, plain and simple, a fetal-remains law. As explained above, it provides for the disposition of fetal remains by burial or cremation at no required cost to those undergoing abortions. Ohio Rev. Code § 3726.09.

Moreover, as discussed more fully below, the Clinics' claim that they can be prosecuted for not complying with yet-to-be-adopted rules or not using yet-to-be-released forms fails as a matter of law. Nor do the Clinics have a right to feel a certain level of assurance that a future statute and future rules implementing the statute will not impact their business operations. The Clinics' attempt to characterize S.B. 27 as a ban on all procedural abortions is simply a straw-man argument, and thus their substantive due process arguments are misplaced.

   **2.    *Should this Court address the constitutional question, the U.S. Supreme Court's decision in* Box *upholding a state fetal-remains law undercuts the Clinics' constitutional assertions regarding their patients.***

If the Court reaches the Clinics' contentions on behalf of its patients (Mot. at PageID## 72-74), the U.S. Supreme Court's 2019 decision in *Box* controls. The generic case law the Clinics cite on abortion bans is irrelevant because S.B. 27 is a fetal-remains law—not an abortion ban. The Clinics rely on federal law for their substantive due process arguments, but they fail to even mention the Supreme Court's recent, on-point decision upholding Indiana's fetal-remains law. In *Box*, the Supreme Court reiterated that "a State has a 'legitimate interest in proper disposal of fetal

remains.'" 139 S. Ct. at 1782 (quoting *Akron v. Akron Center for Reproductive Health*, *Inc.*, 462 U. S. 416, 452, n.45 (1983)). The Court then held that the Seventh Circuit "clearly erred in failing to recognize that interest as a permissible basis for Indiana's disposition law." *Id.*; *see also Hopkins v. Jegley*, 968 F.3d 912, 916 (8th Cir. 2020) (vacating the district court's preliminary injunction preventing enforcement of an amendment concerning the disposition of fetal remains and remanding for reconsideration in light of the Supreme Court's decision in *Box* and Chief Justice Roberts's separate, controlling opinion in *June Medical Services*, *LLC v. Russo*, ___ U.S. ___, 140 S. Ct. 2103 (2020)).

Tellingly, the Clinics do not argue that a statute providing for disposal of fetal remains by cremation or burial itself infringes on any fundamental right. Instead, in an attempt to avoid the clear dictates of *Box*, the Clinics repeatedly mischaracterize S.B. 27 as a "ban on all procedural abortions in Ohio." Mot. at PageID# 68; *see also, e.g.*, Mot. at PageID## 69-70, 71-72. The Clinics' argument appears to be that because the Department of Health has not adopted final rules necessary to implement S.B. 27 *in advance of S.B. 27's effective date*, the statute somehow acts as a preemptive ban of all procedural abortions. But S.B. 27 does not ban abortions—either after it takes effect or in advance of it having the force of law.

It is only by mischaracterizing S.B. 27 as a ban on all procedural abortions that the Clinics can even invoke the substantive due process case law they cite. The Clinics use phrases like "the right to access abortion" and "a woman's right to decide to have an abortion," reiterating that "[a] ban on abortion after ten weeks LMP is a clear violation of Ohioans' constitutional rights." Mot. at PageID# 72. But that is not the question before this Court. The question before this Court is simply one of statutory interpretation: whether S.B. 27 bans all procedural abortions. The clear answer is no. By its plain terms, S.B. 27 does not ban *any* abortions. Therefore, rational-basis

review applies because what is at issue is a fetal-remains law—not a "ban" on all procedural abortions. Like *Box*, this is a fetal-remains case, and the Clinics cannot come close to showing that the law is not "rationally related to the State's interest in proper disposal of fetal remains." 139 S. Ct. at 1782; *see also id.* ("on rational basis review, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it" (internal quotation marks omitted)). Under *Box*, the Clinics' claims on behalf of its patients fail.[4]

### C. The Clinics have no viable claim that S.B. 27 deprives them of an alleged economic right to stay in business.

The Clinics challenge S.B. 27's effect on them under rational-basis review—as they must—because "a constitutionally protected right is not implicated." Mot. at PageID# 74. The Clinics are thus left to contend that S.B. 27 is "not reasonably related to any legitimate government interest, and instead, [is] arbitrary and irrational." *Id.* at PageID# 75. Having conceded that rational-basis review applies, the Clinics are forced to contend that the rational-basis test is "not toothless." *Id.* at PageID# 76.

The Clinics make a half-hearted attempt (at PageID# 74 n.12) at claiming that they might in fact have a fundamental right to operate their businesses—while assuring this Court that it "need not decide this question." PageID# 74 n.12. Buried in this footnote, at the end of a long string of out-of-circuit federal cases, is a "but see" citation to a Sixth Circuit decision. *Id.* This buried case is a landmine for the Clinics. In this 2019 decision, the Sixth Circuit joined the Seventh Circuit in holding that "abortion clinics lack a freestanding constitutional right to practice their

---

[4] Regardless, S.B. 27 does not place a substantial obstacle in the path of a woman seeking abortion of a nonviable fetus—a necessary part of the controlling test after *June Medical Services, LLC v. Russo*, 140 S. Ct. 2103 (2020), as a Sixth Circuit panel has conclusively held. *EMWomen's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 433 (6th Cir. 2020). Under the controlling standard, a law regulating abortion is valid if (1) it is "'reasonably related' to a legitimate state interest"; and (2) it does not "ha[ve] the 'effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.'" *Id.* at 433-34 (quoting *June Med. Servs.*, 140 S. Ct. at 2138 (Roberts, C.J., concurring in the judgment)); *see also Hopkins v. Jegley*, 968 F.3d 912, 915 (8th Cir. 2020) (per curiam); *Little Rock Family Planning Servs. v. Rutledge*, 984 F.3d 682, 687 n.2 (8th Cir. 2021).

trade." *Hodges*, 917 F.3d at 913 (quoting *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 986-88 (7th Cir. 2012)); *see also Teixeira v. Cty. of Alameda*, 873 F.3d 670, 690 (9th Cir. 2017) (en banc) ("Never has it been suggested . . . that if there were no burden on a woman's right to obtain an abortion, medical providers could nonetheless assert an independent right to provide the service for pay."). Accordingly, "'[a]s long as the difference in treatment does not unduly burden a woman's right to obtain an abortion, the government is free to treat abortion providers differently' than other entities." *Hodges*, 917 F.3d at 913 (quoting *Planned Parenthood of Ind., Inc.*, 699 F.3d at 988).

Under this Sixth Circuit case law and the Supreme Court's holding in *Box*, the Clinics' contentions regarding their own alleged substantive due process rights fail. The Clinics (at PageID## 75-76) cite out-of-circuit federal cases regarding the inability to comply with a statute. These cases are inapposite. As explained above, the Clinics cannot be prosecuted for not using forms that have not yet been released or not complying with rules that have not yet been adopted. Moreover, as discussed above, the Clinics have mischaracterized S.B. 27 as a "ban on all procedural abortions." Mot. at PageID# 68. Based on this incorrect assertion about the statute, the Clinics then proceed to argue about what interests they might have in providing abortions. *Id.* at PageID# 75. Once again, the Clinics are throwing punches at a straw man. S.B. 27 is a fetal-remains law similar to the one the U.S. Supreme Court upheld in *Box* less than two years ago. The issue is whether Ohio's fetal-remains law passes the rational-basis test that the Clinics concede applies. *See* Mot. at PageID## 74-76. And *Box* answers that in the affirmative. 139 S. Ct. at 1782.

### D. The Clinics' procedural due process claim fails immediately.

The Clinics' procedural due process claim amounts to an assertion that the State Defendants have violated the Clinics' procedural due process rights by not promulgating rules and

forms in advance of S.B. 27's effective date. The Clinics make this assertion despite the fact that S.B. 27 gives the Director of the Department of Health *three months after April 6* to develop and adopt rules necessary to implement the statute, and despite the fact that the Clinics have not yet been deprived of anything. Ohio Rev. Code § 3726.14. The procedural due process claim is groundless.

### 1. *The Clinics do not have a freestanding right to perform abortions.*

The Clinics' argument about their economic right to provide abortion services misses the mark for two reasons. First, as the Sixth Circuit recently held, "[t]he Supreme Court has never identified a freestanding right to perform abortions. To the contrary, it has indicated that there is no such thing." *Hodges*, 917 F.3d at 912. Here, any effect on the Clinics' business as a result of compliance with S.B. 27 would be incidental to the State's "legitimate interest in proper disposal of fetal remains." *Box*, 139 S. Ct. at 1782. So the Clinics are *legally* wrong to frame their business-related procedural due process claim as a freestanding economic privilege. And the Clinics are *factually* wrong because S.B. 27 is not a "ban" on providing abortion services. Thus, the case law they cite (at PageID## 77-78) is inapt because S.B. 27 is not about shuttering abortion clinics. Any cessation of business on April 6, 2021, would be self-inflicted economic disruption based on an obvious misreading of Ohio's fetal-remains statute, which gives the Director of the Department of Health three months from April 6 to develop and adopt rules necessary to implement the statute.

### 2. *The Clinics' claim about potential business disruption fails because S.B. 27 is not a "ban" on procedural abortions.*

The Clinics' Motion strains at credulity when it argues that the Clinics have been deprived of alleged economic rights. The Clinics have been deprived of nothing. The Clinics' own cited cases underscore this point. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999), which the Clinics cite at PageID# 77 of their Motion, holds that: "[t]he first inquiry in every due process

challenge is whether the plaintiff *has been deprived* of a protected interest in 'property' or 'liberty.'" *Id.* at 59 (emphasis added) (citing U.S. Const. amend. XIV). "*Only after finding the deprivation of a protected interest* do[es] [the Court] look to see if the State's procedures comport with due process." *Id.* at 332 (emphasis added).

Here, the Clinics have as yet been deprived of nothing. They simply complain about having less certainty than they would prefer to have while awaiting implementation of S.B. 27. Mot. at PageID## 79-80. But the Clinics cannot show any protected property or liberty interest in a specific level of subjective comfort regarding the potential effects of a law that has yet to go into effect and be fully implemented. The Clinics cite no case law for the idea that an agency violates procedural due process by not promulgating rules pursuant to a statute *in advance of the statute's effective date*—when the statute itself gives the agency three months after the effective date to develop and adopt rules implementing the statue. *See* Ohio Rev. Code § 3726.14. And the two cases the Clinics do cite (at PageID# 80) are factually irrelevant. There is no order here for the Clinics to "cease operations," nor are the Clinics being forced to "cease provision of abortion." Mot. at PageID# 80 (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006); *Planned Parenthood Sw. Ohio Region v. Hodges*, 138 F. Supp. 3d 948, 954 (S.D. Ohio 2015)).

### 3. *The Clinics cannot credibly contend that they have been deprived of a protected interest without due process.*

Because the Clinics have not been deprived of any protected property or liberty interest, there is no lack of process, so this part of the procedural due process claim necessarily fails. This Court need not reach the issue. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 297 (6th Cir. 2006) ("Since Plaintiff is unable to allege that it was deprived of a liberty or property interest protected by the Due Process Clause, we need not reach the

15

question of whether the plaintiff was afforded the requisite procedural due process."), *overruled in part on other grounds*.[5]

## II.     A Preliminary Injunction Is Unnecessary Because the Clinics Have Not Produced Any Evidence To Show That They Will Suffer an Irreparable Injury.

In addition to the inability to demonstrate a substantial likelihood of success on the merits, the Clinics cannot demonstrate that they will suffer an irreparable injury without injunctive relief. A plaintiff must show a likelihood, not just a possibility, of irreparable injury. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 22 (2008). "[T]his factor *is* dispositive; a plaintiff *must* present the existence of an irreparable injury to get a preliminary injunction. *D.T.*, 942 F.3d at 327. "Thus, a district court is well within its province when it denies a preliminary injunction based solely on the lack of an irreparable injury." *Id.* (internal quotation marks omitted). The Clinics have asserted various possible harms, but they have not shown that they will suffer irreparable injury. In fact, there is corrective relief available at a later date, in the ordinary course of litigation, that would weigh against a claim of irreparable harm. As discussed more fully below, the Clinics fail to show that they will suffer an irreparable injury if the court does not preliminarily enjoin the State Defendants.

The Clinics argue that "without relief from this Court, [they] will have to cease providing procedural abortions to their patients, or otherwise face severe penalties," and that "Plaintiffs and their physicians will thus be forced to stop all procedural abortions in Ohio beginning on April 6, absent an injunction from this Court." Mot. at PageID## 81, 68. These claims are speculative at best. There is no evidence that what the Clinics assert will occur, especially given the fact that S.B. 27 states that "[n]ot later than ninety days after the effective date of this section, the director

---

[5] Once again, because the Clinics mischaracterize S.B. 27, their cited case law is irrelevant. S.B. 27 does not "impose[] new requirements on Plaintiffs with no opportunity to comply." Mot. at PageID# 81. Thus, case law regarding the "immediate shut-down of [an] abortion provider's practice" is irrelevant. *See id.* (citing *Baird*, 438 F.3d at 611-13).

of health, in accordance with Chapter 119[] of the Revised Code, shall adopt rules necessary to carry out sections 3726.01 to 3726.13 of the Revised Code." Ohio Rev. Code § 3726.14.

> **A.** **The Clinics cannot credibly contend that they will have to cease providing procedural abortions on April 6, 2021.**

There are many factors that will dictate when the required rules will be effective, and none of the scenarios the Clinics assert show that the rules and forms will be adopted by April 6, 2021. There is a procedure in place once the Department of Health introduces rules. For example, if the Department of Health introduced rules on S.B. 27's effective date of April 6, the rules would go to the Joint Committee on Agency Rule Review ("JCARR"). JCARR's primary function is to review proposed new, amended, and rescinded rules to ensure that they do not exceed their rule-making authority granted to them by the General Assembly. Not only does JCARR review the rules to ensure they do not exceed their rule-making authority, it also reviews the proposed rules to ensure that they do not conflict with existing rules of that agency or another state agency.

Before filing rules with JCARR, the Department of Health is required to post the proposed rules for public comment. Ohio Rev. Code §§ 119.03(D); 119.0311. This public-comment period is usually 30 days. *See id.* § 119.03. Moreover, the Department of Health cannot even file rules with JCARR until the Department's internal board has conducted its review, which it has 60 days to complete—concurrent with the 30 days for public comment. *See* Ohio Rev. Code § 3701.34.

Even if the Department of Health posted proposed rules on April 6, 2021, there would be a period for public comment, which would likely last until early May 2021. At this time, the Clinics would have the opportunity to voice any opposition to the proposed rules. Under Section 119.03, any "proposed rule . . . shall be filed as required by this division at least *sixty-five days prior* to the date on which the agency . . . issues an order adopting the proposed rule[.]" (emphasis added). Thus, under the normal agency review process, the earliest date for a rule posted for public

comment on April 6, 2021, to be filed with JCARR would be June 2021—with no final rules adopted until even later that summer. The Clinics can raise any objections to the rules not only when the rules are posted, but also at the Director's hearing under Section 119.03, as well as at the JCARR hearing. Moreover, the Department of Health may well post proposed rules for public comment later than April 6, 2021, which would make any date for the adoption of final rules implementing S.B. 27 even later this year. Thus, the Clinics will have ample opportunity in the coming months to comment on proposed rules before those rules undergo the complete agency and JCARR review process and are adopted as final.

**B. The Clinics have offered only conclusory, speculative, and hypothetical theories of irreparable harm.**

The Clinics' assertions of irreparable harm all rest on the faulty premise that on April 6, 2021, the Clinics will somehow be forced to stop performing procedural abortions out of fear regarding not-yet-issued rules and forms. As a matter of law and based on the plain text of S.B. 27, these assertions fall flat. The Clinics have not shown and cannot show that they will be civilly prosecuted for not complying with rules not yet adopted and forms not yet released. Fear of what could happen on April 6, 2021, does not equate to irreparable harm. *See Bertec Corp. v. Sparta Software Corp.*, No. 2:19-CV-04623, 2019 U.S. Dist. LEXIS 222481, at *20 (S.D. Ohio Dec. 27, 2019) ("Testimony from a witness for the plaintiff that is conjectural and only based on the plaintiff's 'fears' of what might happen is insufficient to establish irreparable harm.").

The Clinics concede that "SB27 suspends criminal penalties until [the Department of Health] has adopted rules," but then go on to list various potential civil and other penalties that the Clinics say they fear could be imposed. Mot. at PageID# 65. This is merely speculative. The Clinics' list of potential civil penalties in their brief and affidavits starts from the false premise that

the Clinics must cease providing all procedural abortions on April 6 because they do not yet know what forthcoming rules and forms will say at a future time. Mot. at PageID## 65-66.

In Sharon Liner's affidavit supporting the Clinics' Motion, Liner states: "I and others at PPSWO credibly fear being penalized if we continue to provide procedural abortions after SB 27 takes effect." Doc. No. 1-1, Mot. Exh. 1, PageID# 90, ¶ 7. She also states that "my colleagues and I simply cannot risk the severe penalties that would apply to those who violate the law." *Id.* at PageID# 96, ¶ 27. Although Liner attests to these concerns, there is no evidence as to what penalty will in fact occur once S.B. 27 takes effect. There is no direct evidence that Liner will have any sort of penalty lodged against her or what she will be penalized for doing. Although she may well be sincere in her concerns, this does not equate to irreparable harm.

Also included in the Clinics' Exhibits is the affidavit of President and Chief Executive Officer of Planned Parenthood of Greater Ohio ("PPGOH"), Iris E. Harvey. Harvey attests in her affidavit that "PPGOH staff credibly fear being penalized if they continue to provide procedural abortions after SB 27 takes effect." Doc. No. 1-1, Mot. Exh. 2, PageID# 107, ¶ 6. Again, there is no evidence offered as to what the penalty would be, and how specific individuals would be harmed. Similarly, Executive Director of Preterm-Cleveland ("Preterm") Chrisse France's affidavit states there is concern for Preterm's viability as an abortion provider because S.B. 27 may have a financial toll on the entity. *Id.* at PageID# 118, ¶ 24. But it is well established that a monetary claim will not support a finding of irreparable harm. *Nat'l Viatical Inc., v. Universal Settlements, Int'l*, 716 F.3d 952, 957 (6th Cir. 2013).

Finally, since the Clinics will not have to stop providing procedural abortions on April 6, 2021, there will be no damage to their reputation in the community. As discussed above, S.B. 27 requires that the Department of Health promulgate rules and forms necessary to implement the

statute.  More importantly, damage to reputation does not afford a basis for a finding of irreparable injury sufficient for preliminary injunctive relief.  *Sampson v. Murray*, 415 U.S. 61, 89 (1974).

**III.    A Preliminary Injunction Against the State Defendants Will Harm Third Parties and Would Not Serve the Public's Interest.**

If this Court granted the preliminary injunction the Clinics seek, it would enjoin the State Defendants from complying with S.B. 27 by developing rules necessary to implement the statute within the ninety-day window following the statute's effective date.  Put another way, the Clinics complain about a lack of clarity—but the very injunctive relief they seek would put a roadblock in the path of clarifying and implementing S.B. 27.  The Clinics argue (at PageID# 83) that no third parties will be harmed if the State Defendants are enjoined.  However, if the Clinics are seeking clarification and guidance from the State Defendants on the requirements of S.B. 27, enjoining the State Defendants will be contrary to what they seek.  And it will harm the public by preventing the proper implementation of a state statute intended to provide for the disposition of fetal remains.

"Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers).  As the Supreme Court has already stated in upholding a state fetal-remains law similar to Ohio's, "a State has a legitimate interest in proper disposal of fetal remains."  *Box*, 139 S. Ct. at 1782.  If the State is enjoined here, it in turn would harm the public's best interest, because the best interest here is that of the citizens in Ohio, as set forth by the legislation of its elected representatives.

**CONCLUSION**

For the foregoing reasons, the Clinics' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Emily Pelphrey*
EMILY PELPHREY (0077482)
ANDREW D. MCCARTNEY (0099853)*
    *Pro hac vice motion pending*
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Emily.Pelphrey@OhioAttorneyGeneral.gov
Andrew.McCartney@OhioAttorneyGeneral.gov

*Counsel for Defendants the Ohio Department of
Health, Stephanie McCloud, Director of the Ohio
Department of Health, and the State Medical Board*

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing *Response in Opposition to Plaintiffs' Motion for Preliminary Injunction* has been served upon the following by electronic mail this 18th day of March, 2021.

B. Jessie Hill #0074770
Freda J. Levenson #0045916
American Civil Liberties Union of Ohio
Foundation, Inc.
4506 Chester Ave.
Cleveland, OH 44103
bjh11@cwru.edu
flevenson@acluohio.org

Jennifer Dalven* PHV #23858
Rachel Reeves* PHV #23855
Clara Spera* PHV #23851
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
jdalven@aclu.org
rreeves@aclu.org
cspera@aclu.org

Maithreyi Ratakonda* PHV #23846
Trial Attorney
Planned Parenthood Federation of America
123 William Street, Floor 9
New York, NY 10038
mai.ratakonda@ppfa.org

Fanon A. Rucker #0066880
The Cochran Firm
119 E. Court St., Suite 102
Cincinnati, OH 45202
frucker@cochranohio.com

Richard Muniz* PHV #23847
Planned Parenthood Federation of America
1110 Vermont Ave. NW, Suite 300
Washington, DC 20005
richard.muniz@ppfa.org

*Counsel for Plaintiffs Planned Parenthood Southwest Ohio Region, Sharon Liner M.D., Planned Parenthood of Greater Ohio, Preterm-Cleveland, Women's Med Group Professional Corporation, Northeast Ohio Women's Center LLC*

*/s/ Emily Pelphrey*
EMILY PELPHREY (0077482)
Assistant Attorney General