Fanon A. Rucker (#0066880)
B. Jessie Hill (#0074770)
Freda J. Levenson (#0045916)

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **PLANNED PARENTHOOD** | : | **Case No.** _____ |
| **SOUTHWEST OHIO REGION** | : | |
| c/o Fanon A. Rucker | : | **Judge:** _____ |
| The Cochran Firm | : | |
| 119 E. Court St., Suite 102 | : | |
| Cincinnati, OH 45202 | : | **COMPLAINT FOR DECLARATORY** |
| | : | **AND INJUNCTIVE RELIEF** |
| **SHARON LINER, M.D.** | : | |
| c/o Fanon A. Rucker | : | |
| The Cochran Firm | : | |
| 119 E. Court St., Suite 102 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **PLANNED PARENTHOOD OF** | : | |
| **GREATER OHIO** | : | |
| c/o Fanon A. Rucker | : | |
| The Cochran Firm | : | |
| 119 E. Court St., Suite 102 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **PRETERM-CLEVELAND** | : | |
| c/o B. Jessie Hill | : | |
| ACLU of Ohio | : | |
| 4506 Chester Ave. | : | |
| Cleveland, OH 44103 | : | |
| | : | |
| **WOMEN'S MED GROUP** | : | |
| **PROFESSIONAL CORPORATION** | : | |
| c/o B. Jessie Hill | : | |
| ACLU of Ohio | : | |
| 4506 Chester Ave. | : | |
| Cleveland, OH 44103 | : | |
| | : | |
| **NORTHEAST OHIO WOMEN'S** | : | |
| **CENTER LLC** | : | |
| c/o B. Jessie Hill | : | |
| ACLU of Ohio | : | |
| 4506 Chester Ave. | : | |
| Cleveland, OH 44103 | : | |

Exhibit 1

|  | : |
|---|---|
| **Plaintiffs,** | : |
|  | : |
| **vs.** | : |
|  | : |
| **OHIO DEPARTMENT OF HEALTH** | : |
| 246 N. High Street | : |
| Columbus, OH 43215 | : |
|  | : |
| **SERVE:** | : |
| Stephanie McCloud, Director | : |
| 246 N. High Street | : |
| Columbus, OH 43215 | : |
|  | : |
| **SERVE ALSO:** | : |
| Attorney General Dave Yost | : |
| 30 E. Broad Street, 17th Floor | : |
| Columbus, OH 43215 | : |
|  | : |
| **STEPHANIE McCLOUD** | : |
| Director, ODH | : |
| 246 N. High Street | : |
| Columbus, OH 43215 | : |
|  | : |
| **STATE MEDICAL BOARD OF OHIO** | : |
| 30 E. Broad Street, 3rd Floor | : |
| Columbus, OH 43215 | : |
|  | : |
| **SERVE:** | : |
| Kim G. Rothermel, M.D., Secretary | : |
| 30 E. Broad Street, 3rd Floor | : |
| Columbus, OH 43215 | : |
|  | : |
| **JOSEPH T. DETERS** | : |
| Hamilton County Prosecutor | : |
| 230 E. Ninth Street, Suite 4000 Cincinnati, | : |
| OH 45202 | : |
|  | : |
| **ANDREW W. GARTH** | : |
| Cincinnati City Solicitor | : |
| 801 Plum Street, Suite 214 | : |
| Cincinnati, OH 45202 | : |
|  | : |
| **G. GARY TYACK** | : |
| Franklin County Prosecutor | : |
|  | : |

Exhibit 1

373 S. High Street, 14th Floor Columbus,    :
OH 43215                                    :
                                            :
**ZACH KLEIN**                              :
Columbus City Attorney                      :
77 N. Front Street                          :
Columbus, OH 43215                          :
                                            :
**MICHAEL C. O'MALLEY**                     :
Cuyahoga County Prosecutor                  :
Justice Center, Courts Tower                :
1200 Ontario Street, 9th Floor              :
Cleveland, OH 44113                         :
                                            :
**BARBARA A. LANGHENRY**                    :
Cleveland Director of Law                   :
601 Lakeside Ave., Room 106                 :
Cleveland, OH 44114                         :
                                            :
**ROSS CIRINCIONE**                         :
Bedford Heights Director of Law             :
5661 Perkins Road                           :
Bedford Heights, OH 44146                   :
                                            :
**MATHIAS HECK, JR.**                       :
Montgomery County Prosecutor                :
301 W. Third Street                         :
P.O. Box 972                                :
Dayton, OH 45402                            :
                                            :
**THEODORE A. HAMER**                       :
Kettering Director of Law                   :
3600 Shroyer Road                           :
Kettering, OH 45429                         :
                                            :
**SHERRI BEVAN WALSH**                      :
Summit County Prosecutor                    :
53 University Ave.                          :
Akron, OH 44308                             :
                                            :
**JANET CIOTOLA**                           :
Cuyahoga Falls Director of Law              :
2310 Second Street                          :
Cuyahoga Falls, OH 44221                    :
                                            :
          **Defendants.**                   :

Exhibit 1                                    000003

## INTRODUCTION

1.      This is a constitutional challenge to Am.S.B. No. 27, 2020 Ohio Laws File 7 ("SB27"), seeking declaratory and injunctive relief, because compliance is impossible due to the Ohio Department of Health's ("ODH") failure to adopt implementing rules and forms. A copy of SB27 is attached hereto as Exhibit A. SB27 takes effect on April 6, 2021.

2.      SB27 is a sea-change in how Plaintiffs manage tissue from a procedural abortion (also known as a surgical abortion). Currently, such tissue is handled in accordance with laws regulating infectious waste—similar to other tissue removed during medical procedures and surgeries. Infectious waste generally must be treated by incineration, autoclaving, or chemical treatment, and upon information and belief, may not be cremated or interred.

3.      Instead, SB27 singles out abortion—and more specifically, procedural abortion— and requires tissue from a procedural abortion to be cremated or interred.

4.      SB27 also requires that, before any procedural abortion, state-created forms must be used to enable this disposition.

5.      SB27 charges the director of ODH with adopting rules prescribing these forms within 90 days of SB27's April 6 effective date—that is, by July 5, 2021.

6.      To date, ODH has not prescribed the required forms. And because notice and comment is required before ODH can adopt any rules, *see* R.C. 119.03 and 119.04, the forms will not be available until after SB27 takes effect. As a result, abortion providers in Ohio will lack the state-issued forms needed to comply with SB27 when the law becomes effective on April 6.

7.      SB27 provides that the misdemeanor penalties associated with the bill do not apply until ODH adopts implementing rules. However, the bill does not suspend any noncriminal sanctions. The absence of forms thus leaves Ohio abortion providers in an impossible situation: if they continue to provide procedural abortions after April 5, notwithstanding SB27's requirements,

Exhibit 1

they face loss of their professional and facility licenses, civil suits, and civil penalties up to $250,000.

8.      Given the history of aggressive enforcement by the State of Ohio, including by ODH, Plaintiffs have a credible fear that they will be penalized despite the impossibility of complying with SB27 when it takes effect.

9.      Consequently, Plaintiffs' counsel contacted the Attorney General's Office multiple times, seeking an assurance that Plaintiffs will not be civilly penalized for their inability to comply with SB27. The Attorney General has refused to give any assurance, necessitating this action.

10.     In light of these severe penalties and ODH's failure to adopt the necessary rules and forms, as well as the Attorney General's refusal to provide assurances, SB27 will have the effect of banning all procedural abortions in the state. Procedural abortion is the most common method of abortion in Ohio, accounting for more than half of abortions, and it is the only abortion method available for patients who are over ten weeks pregnant. It is also the only method available at any point in pregnancy for patients for whom medication abortion is contraindicated.

11.     Unless this Court grants a temporary restraining order or preliminary injunction, Plaintiffs will be forced to turn away patients seeking procedural abortions starting on April 6. Indeed, because of the great need for abortion care in the state coupled with the state's requirement that patients make a separate visit to the health center prior to their abortion to receive state-mandate information, providers schedule abortion appointments well in advance. Thus, absent relief from this Court, Plaintiffs will need to stop making appointments before April 6. Effectively banning all procedural abortions would be in direct violation of Plaintiffs' patients' fundamental constitutional right to have an abortion and would cause those patients irreparable harm.

Exhibit 1                                                      000005

12.     Absent an injunction, Plaintiffs, too, will be deprived of their constitutional right to due process, because SB27 mandates compliance, even though compliance with SB27 is out of their hands and not possible without the ODH-prescribed forms. Without any process, Plaintiffs will be deprived of their protected interests in pursuing their profession and providing reproductive health care, including procedural abortions.

## PARTIES

### A.     Plaintiffs

13.     Plaintiff Planned Parenthood Southwest Ohio Region ("PPSWO") is a nonprofit corporation organized under the laws of the State of Ohio. PPSWO and its predecessor organizations have provided a broad range of high-quality reproductive health care to patients in southwest Ohio since 1929. PPSWO's ambulatory surgical facility ("ASF"), located in Cincinnati, provides procedural abortions. The physicians at PPSWO who provide procedural abortions risk loss of their medical licenses, civil penalties, and civil suits if they violate SB27, as well as criminal penalties. PPSWO faces the loss of its ASF license, civil penalties, and civil suits for violations of SB27, as well as criminal penalties for itself and its staff. If PPSWO is forced to cease providing procedural abortions due to ODH's failure to adopt rules and forms, PPSWO will be deprived without due process of its protected property and liberty interests in operating its business and in providing procedural abortion. PPSWO sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

14.     Plaintiff Sharon Liner, M.D., is a physician licensed to practice medicine in Ohio with 17 years of experience in women's health care. Dr. Liner is PPSWO's Medical Director, and in that role, she supervises physicians providing abortions, develops PPSWO's policies and procedures, and provides comprehensive reproductive health care services including procedural abortion. Dr. Liner has been providing abortions since 2002. Dr. Liner faces loss of her medical

Exhibit 1                                                                                    000006

license, civil penalties, and civil suits if she violates SB27, as well as criminal penalties. If Dr. Liner is forced to cease providing procedural abortions due to ODH's failure to adopt rules and forms, Dr. Liner will be deprived without due process of her protected property and liberty interests in her profession and in providing procedural abortion. She sues on her own behalf and on behalf of her patients.

15.     Plaintiff Planned Parenthood of Greater Ohio ("PPGOH") is a nonprofit corporation organized under the laws of the State of Ohio. PPGOH was formed in 2012 through a merger of several local and regional Planned Parenthood affiliates that had served patients in Ohio for decades. PPGOH serves patients in northern, eastern, and central Ohio. Two PPGOH ASFs, located in East Columbus and Bedford Heights, provide procedural abortions. The physicians at PPGOH who provide procedural abortions risk loss of their medical licenses, civil penalties, and civil suits if they violate SB27, as well as criminal penalties. PPGOH faces the loss of its ASF license, civil penalties, and civil suits for violations of SB27, as well as criminal penalties for itself and its staff. If PPGOH is forced to cease providing procedural abortions due to ODH's failure to adopt rules and forms, PPGOH will be deprived without due process of its protected property and liberty interests in operating its business and in providing procedural abortion. PPGOH sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

16.     Plaintiff Preterm-Cleveland ("Preterm"), a nonprofit corporation organized under the laws of the State of Ohio, has operated a reproductive health care clinic in Cleveland, Ohio, since 1974. Preterm provides the full spectrum of reproductive and sexual health care services, including procedural abortions. The physicians at Preterm who provide procedural abortions risk loss of their medical licenses, civil penalties, and civil suits if they violate SB27, as well as criminal penalties. Preterm faces the loss of its ASF license, civil penalties, and civil suits for violations of

Exhibit 1                                                         000007

SB27, as well as criminal penalties for itself and its staff. If Preterm is forced to cease providing procedural abortions due to ODH's failure to adopt rules and forms, Preterm will be deprived without due process of its protected property and liberty interests in operating its business and providing procedural abortion. Preterm sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

17. Plaintiff Women's Med Group Professional Corporation ("WMGPC") owns and operates Women's Med Center of Dayton ("WMCD") in Kettering, Ohio. WMGPC and its predecessors have been providing abortions in the Dayton area since 1975. The physicians at WMGPC who provide procedural abortions risk loss of their medical licenses, civil penalties, and civil suits if they violate SB27, as well as criminal penalties. WMGPC faces the loss of its ASF license, civil penalties, and civil suits for violations of SB27, as well as criminal penalties for itself and its staff. If WMGPC is forced to cease providing procedural abortions due to ODH's failure to adopt rules and forms, WMGPC will be deprived without due process of its protected property and liberty interests in operating its business and providing procedural abortion. WMGPC sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

18. Plaintiff Northeast Ohio Women's Center, LLC ("NEOWC") is a corporation organized under the laws of the State of Ohio, which operates an ASF in Cuyahoga Falls, where it provides reproductive health care, including procedural abortions. The physicians at NEOWC who provide procedural abortions risk loss of their medical licenses, civil penalties, and civil suits if they violate SB27, as well as criminal penalties. NEOWC faces the loss of its ASF license, civil penalties, and civil suits for violations of SB27, as well as criminal penalties for itself and its staff. If NEOWC is forced to cease providing procedural abortions due to ODH's failure to adopt rules and forms, NEOWC will be deprived without due process of its protected property and liberty

Exhibit 1                                                                              000008

interests in operating its business and providing procedural abortion. NEOWC sues on behalf of itself; its current and future staff, officers, and agents; and its patients.

19.     Plaintiffs together represent all providers of procedural abortions in Ohio.

**B.     Defendants**

20.     Defendant Ohio Department of Health ("ODH") is charged with promulgating rules under SB27, including the notification, consent, and detachable supplemental forms. ODH can suspend or revoke Plaintiffs' ASF licenses, order Plaintiffs' ASFs to cease operations, and/or impose civil penalties on Plaintiffs' ASFs for violations of SB27.

21.     Defendant Stephanie McCloud is the Director of ODH. She is charged with promulgating rules under SB27, including the notification, consent, and detachable supplemental forms. She can also suspend or revoke Plaintiffs' ASF licenses, order Plaintiffs' ASFs to cease operations, and/or impose civil penalties on Plaintiffs' ASFs for violations of SB27. She is sued in her official capacity.

22.     Defendant State Medical Board of Ohio ("Medical Board") is charged with enforcing physician licensing. The Medical Board has authority to act against a physician's license based on a commission of an unlawful act, including by suspending or revoking the license. The Medical Board may also impose civil penalties for violations of SB27.

23.     Defendant Joseph T. Deters is the Hamilton County Prosecutor. He is responsible for the enforcement of all of the criminal laws in Hamilton County, where PPSWO's ASF is located and where Dr. Liner provides abortions, including the criminal provisions contained in SB27. He is sued in his official capacity.

24.     Defendant Andrew W. Garth is the Cincinnati City Solicitor. He is responsible for the prosecution of all misdemeanor offenses occurring in the City of Cincinnati, where PPSWO's

Exhibit 1                                                                 000009

ASF is located and where Dr. Liner provides abortions, including the criminal provisions contained in SB27. He is sued in his official capacity.

25.     Defendant G. Gary Tyack is the Franklin County Prosecutor. He is responsible for the enforcement of all of the criminal laws in Franklin County, where PPGOH's East Columbus health center is located, including the criminal provisions contained in SB27. He is sued in his official capacity.

26.     Defendant Zach Klein is the Columbus City Attorney. He is responsible for the prosecution of all misdemeanor offenses occurring in the City of Columbus, where PPGOH's East Columbus health center is located, including the criminal provisions contained in SB27. He is sued in his official capacity.

27.     Defendant Michael C. O'Malley is the Cuyahoga County Prosecutor. He is responsible for the enforcement of all of the criminal laws in Cuyahoga County, where Preterm's clinic and PPGOH's Bedford Heights health center are located, including the criminal provisions contained in SB27. He is sued in his official capacity.

28.     Defendant Barbara A. Langhenry is the Director of Law for the City of Cleveland. She is responsible for the prosecution of all misdemeanor offenses occurring in the City of Cleveland, where Preterm's clinic is located, including the criminal provisions contained in SB27. She is sued in her official capacity.

29.     Defendant Ross Cirincione is the Director of Law for the City of Bedford Heights. He is responsible for the prosecution of all misdemeanor offenses occurring in the City of Bedford Heights, where PPGOH's Bedford Heights health center is located, including the criminal provisions contained in SB27. He is sued in his official capacity.

Exhibit 1                                                    000010

30.     Defendant Mathias H. Heck, Jr. is the Montgomery County Prosecutor. He is responsible for the enforcement of all of the criminal laws in Montgomery County, where WMGPC's WMCD facility is located, including the criminal provisions contained in SB27. He is sued in his official capacity.

31.     Defendant Theodore A. Hamer is the Director of Law for the City of Kettering. He is responsible for the prosecution of all misdemeanor offenses occurring in the City of Kettering, where WMGPC's WMCD facility is located, including the criminal provisions contained in SB27. He is sued in his official capacity.

32.     Defendant Sherri Bevan Walsh is the Summit County Prosecutor. She is responsible for the enforcement of all of the criminal laws in Summit County, where NEOWC's Cuyahoga Falls health center is located, including the criminal provisions contained in SB27. She is sued in her official capacity.

33.     Defendant Janet Ciotola is the Director of Law for the City of Cuyahoga Falls. She is responsible for the prosecution of all misdemeanor offenses occurring in the City of Cuyahoga Falls, where NEOWC's Cuyahoga Falls health center is located, including the criminal provisions contained in SB27. She is sued in her official capacity.

## JURISDICTION AND VENUE

34.     The Court has jurisdiction over this complaint pursuant to R.C. 2721.02, 2727.02, and 2727.03.

35.     Venue is proper in this Court pursuant to Civ.R. 3(C)(6), because Plaintiffs PPSWO and Dr. Liner provide procedural abortions in Hamilton County and thus the claims for relief arise in part in Hamilton County. Venue is also proper in this Court under Civ.R. 3(C)(4), because Defendants Deters and Garth maintain their principal offices in Hamilton County.

Exhibit 1                                                                 000011

**FACTUAL ALLEGATIONS**

**A.**     **Abortion in Ohio**

36.     Legal abortion is one of the safest medical procedures in the United States.[1]

37.     There are two main methods of abortion: medication abortion and procedural abortion. Both medication abortion and procedural abortion are effective in terminating a pregnancy.

38.     Medication abortion involves a combination of two pills, mifepristone and misoprostol, which expel the contents of the uterus in a manner similar to a miscarriage after the patient has left the clinic and in a location of the patient's choosing, typically their own home.

39.     Despite sometimes being referred to as "surgical abortion," procedural abortion is not what is commonly understood to be "surgery," as it involves no incisions. In a procedural abortion, the clinician uses suction from a thin, flexible tube, and in some instances, other instruments, to empty the contents of the patient's uterus.

40.     After a procedural abortion, Plaintiffs safely dispose of the products of conception—along with other pregnancy tissue, such as placenta, gestational sac, and umbilical cord—in accordance with all applicable laws and regulations.

41.     Plaintiffs provide procedural abortion up to maximum gestations between 16 weeks and 6 days and 21 weeks and 6 days, as measured from the first day of the patient's last menstrual period ("LMP"). Twenty-one weeks and 6 days LMP is the legal limit for abortion in Ohio.[2]

---

[1] Natl. Academies of Sciences, Eng. & Medicine, The Safety & Quality of Abortion Care in the United States 77–78, 162–63 (2018), *available at* https://www.nap.edu/catalog/24950/the-safety-and-quality-of-abortion-care-in-the-united-states.

[2] A full-term pregnancy is approximately 40 weeks LMP. R.C. 2919.201 prohibits abortions after 22 weeks LMP.

Exhibit 1                                                    000012

42.     According to the latest data from ODH in 2019, more than 61 percent of abortions in the state were procedural abortions.[3] Because legal abortion is so safe, the vast majority of abortions can be and are safely provided in an outpatient setting. In 2019, 93 percent of abortions were performed in an ASF, including Plaintiffs' ASFs, and another 6.75 percent were provided in another type of outpatient facility.[4]

43.     Because Ohio law restricts medication abortion to the first ten weeks of pregnancy,[5] procedural abortion is the only method of abortion available after ten weeks LMP, and for some, it is the only method available. For example, a patient may be allergic to one of the medications used in medication abortion or may have medical conditions that make procedural abortion relatively safer.

**C.     Preexisting Laws Relating to Disposition of Human Tissue**

44.     As part of ASF licensure, Plaintiffs' ASFs must establish and follow written infection control policies and procedures that address the "disposal of biological waste; including blood, body tissue; and fluid in accordance with Ohio law." Ohio Adm.Code 3701-83-09(D)(3).

45.     Since 1974, Ohio has required fetal tissue be disposed in a "humane" manner. Ohio Adm.Code 3701-47-05(A).

46.     The disposition of embryonic and fetal tissue is also subject to regulation as infectious waste. *See* R.C. 3734.01(R); Ohio Adm.Code 3745-27-01(I)(6)(c). Infectious waste must be treated by incineration, autoclaving, chemical treatment, or an alternative treatment

---

[3] ODH, Induced Abortions in Ohio, 2019, at 23 (2020), https://bit.ly/386HyzK.
[4] *Id.* at 22.
[5] R.C. 2919.123 restricts Ohio abortion providers to prescribing the first drug according to the federally approved label, which allows use of mifepristone only up to 10 weeks LMP. *See* U.S. Food & Drug Administration, *Mifeprex (mifepristone) Information* (last updated Feb. 5, 2018), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/mifeprex-mifepristone-information. Accordingly, Plaintiffs provide medication abortion up to 10 weeks LMP (through 70 days).

Exhibit 1                                            000013

technology approved by the director of the Ohio Environmental Protection Agency ("EPA") and then disposed as solid waste. Ohio Adm.Code 3745-27-32(A) and (I)(18).

47.    Upon information and belief, neither cremation nor interment has been approved as an alternative treatment technology.[6]

48.    Separate from the laws that currently govern embryonic or fetal tissue disposition, there are rules that govern disposition of dead human bodies and body parts. For instance, a crematory operator generally may not cremate a dead human body unless it has obtained a death certificate, burial permit, and cremation authorization form. R.C. 4717.23(A). A crematory may not simultaneously cremate more than one decedent unless the decedents were related by consanguinity or affinity or were common-law married or otherwise cohabiting in the year preceding their deaths. R.C. 4717.24(A)(7) and 4717.26(D). Tissue from more than one living individual that has been removed for medical purposes during biopsy, treatment, or surgery may be cremated simultaneously only if authorized on a cremation authorization form. R.C. 4717.20(C) and 4717.26(D). Similarly, a burial permit is required before a dead body (or a dead fetus of at least 20 weeks gestation) is interred, and a death certificate is needed to obtain a permit. R.C. 3705.17 (dead body) and 3705.20(B) (fetal death).

**D.    Senate Bill 27**

49.    SB27 drastically alters the disposition requirements for "fetal remains," which SB27 defines as "the product of human conception that has been aborted," i.e., a "zygote, blastocyte, embryo, or fetus." R.C. 3726.01(C).

---

[6] *See* Ohio EPA, *Currently Approved Infectious Waste Alternative Treatment Technologies*, https://epa.ohio.gov/dmwm/Home/NonHW-Facility-List/LiveAccId/131 642#131647707-currently-approved-infectious-waste-alternative-treatment-technologies (last accessed Feb. 21, 2021).

Exhibit 1                                                                    000014

50.     SB27 does not apply to tissue from a miscarriage or medication abortion, although tissue from a miscarriage or medication abortion is identical to the tissue from a procedural abortion.

51.     Under SB27, fetal remains from a procedural abortion at an abortion facility must be disposed by cremation or interment.[7] R.C. 3726.02(A).

52.     SB27 further states cremation of fetal remains shall be in a crematory facility in compliance with Chapter 4717 of the Revised Code. R.C. 3726.02(B).

53.     The bill also provides that a patient who has a procedural abortion has the option to decide whether to dispose of fetal remains by cremation or interment (referred to as the "disposition determination") and to determine the location of such disposition. R.C. 3726.03(A).

54.     Before the procedural abortion, the patient must be provided with an ODH-prescribed "notification form." R.C. 3726.03(B). Patients must certify in writing that they have received the notification form. R.C. 2317.56(B)(4)(c).

55.     If the patient chooses to determine disposition under R.C. 3726.03, then that decision must be documented on an ODH-prescribed "consent form." R.C. 3726.04(A)(1).[8] As with the notification form, the consent form must be completed before the abortion. R.C. 2317.56(B)(4)(d).

---

[7] "Cremation" means "the technical process of using heat and flame to reduce human or animal remains to bone fragments or ashes or any combination thereof," R.C. 3726.01(B) and 4717.01(M), and "interment" means "the burial or entombment of fetal remains," R.C. 3726.01(D). Although incineration is generally the same process as cremation, incineration is not allowed in a crematory facility, *see* R.C. 4717.01(K), and SB27 requires cremation in a licensed crematory facility, R.C. 3726.02(B).

[8] If the patient is an unmarried, unemancipated minor, SB27 requires parental consent to the patient's disposition determination, unless the patient has obtained a judicial bypass order. R.C. 3726.04(B)(2).

Exhibit 1                                                                                          000015

56. If the patient does not choose to determine disposition under R.C. 3726.03, the abortion facility must determine the disposition, but that disposition must still be by cremation or interment. R.C. 3726.04(A)(2).

57. SB27 requires routine reporting of the method of disposition, along with other detailed data regarding abortion patients, to ODH. R.C. 3701.79(C).

58. An abortion facility may not release the tissue or arrange for disposition until the patient has decided whether or not they want to direct whether the tissue is cremated or interred (and if they do, until after the patient has provided consent on the ODH form). R.C. 3726.05.

59. Abortion facilities must document the patient's disposition determination (and if applicable, consent) in the patient's medical record, R.C. 3726.10, and "maintain evidentiary documentation demonstrating the date and method of the disposition," R.C. 3726.11. An abortion facility must also establish and maintain written policies and procedures addressing cremation or interment. R.C. 3726.12.

60. A crematory operator may not cremate fetal remains without first receiving a properly executed "detachable supplemental form." R.C. 4717.271(A)(1). SB27 expressly allows a cremation without a death certificate, cremation authorization form, or burial permit, R.C. 4717.271(B); it is silent as to whether a death certificate or burial permit is required for interment.

61. SB27 immunizes any person who inters or cremates fetal remains from criminal, civil, and professional liability if the person acts in good faith compliance with SB27, receives a properly executed detachable supplemental form, and "[a]cts in furtherance of the final disposition of the fetal remains." R.C. 3726.15. The law provides no similar protection for abortion providers attempting to comply with its provisions.

Exhibit 1

62.     SB27 requires ODH, within 90 days of its effective date (April 6), to adopt rules to carry out the bill, including rules that prescribe the notification, consent, and detachable supplemental forms. R.C. 3726.14.

63.     Rules are required because SB27 as written does not provide Plaintiffs sufficient guidance to determine whether and how they can comply with its requirements. Yet, despite the fact that SB27 was signed into law on December 30, 2020, to date, ODH has not promulgated any rules (or even proposed any rules) related to SB27, including rules prescribing the three forms SB27 requires prior to performing a procedural abortion.

**E.     Plaintiffs' Compliance Efforts**

64.     Recognizing SB27 completely alters the way in which tissue from a procedural abortion may be disposed, after the Ohio General Assembly passed the bill, Plaintiffs began exploring compliance, including contacting funeral homes, crematories, and cemeteries.

65.     Plaintiffs soon learned that providers of cremation and burial services were reluctant to work with them, including because of ambiguities in the law. Not only do the state-prescribed forms not exist, SB27 does not address, for example, whether simultaneous cremation is permitted, whether forms are needed before interment (as well as provide for patient privacy on such forms), or how embryonic or fetal tissue sent to a crime lab (such as in the case of a sexual assault investigation) or to a pathologist for testing (for medical indications, such as suspected molar pregnancy, which if left undiagnosed or unmonitored can lead to a patient developing cancer and/or result in a hysterectomy) must be handled. Rules are also needed to address the apparent conflict between SB27 and infectious waste regulations (which apply to products of conception and other pregnancy tissue).

66.     Given that abortion is highly regulated, Plaintiffs credibly fear enforcement of SB27 starting on April 6.

Exhibit 1                                                                          000017

67.     Indeed, just last year, about one week after ODH issued an order barring "all non-essential surgeries and procedures" during the COVID-19 emergency, ODH sent six inspectors to Plaintiffs PPSWO, Preterm, and WMGPC, to investigate those clinics' compliance with the non-essential surgery ban. At the same time, the Attorney General threatened "quick enforcement action" against the providers. Plaintiffs repeatedly sought assurances from ODH that their practices were compliant with the order, but ODH refused, forcing the providers to sue. A federal court later partially restrained enforcement of the order.

68.     In December 2015, without any notice of violation or an opportunity to respond, the Attorney General announced to the media that his office, on behalf of ODH, would sue Plaintiffs PPSWO and PPGOH for allegedly violating the fetal tissue disposal regulation, Ohio Adm.Code 3701-47-05. PPSWO and PPGOH obtained a federal temporary restraining order enjoining ODH from commencing any enforcement action, because enforcement would have deprived them of due process. In light of the federal court's determination that the regulation was likely unconstitutionally vague, ODH and the Attorney General agreed not to enforce the regulation against PPSWO or PPGOH or any other provider.

69.     ODH has also previously threatened to revoke some of the Plaintiffs' ASF licenses. Ohio requires ASFs to have a written transfer agreement with a local hospital, but Ohio forbids any public hospital from entering into such agreement with any ASF that provides abortion. And although those providers could meet an alternative requirement to have back-up arrangements with local physicians, ODH repeatedly, unilaterally changed the number of back-up physicians required, then denied their variance applications, and moved to revoke their licenses. The providers sued, and the matter is pending in federal court.

Exhibit 1                                                                    000018

70.     In light of these and other aggressive enforcement actions and investigations by the State of Ohio, including ODH, as well as the Attorney General's refusal to assure Plaintiffs they would face no sanctions, Plaintiffs credibly fear being penalized for noncompliance immediately after SB27 takes effect. Plaintiffs' counsel thus contacted the Attorney General's Office multiple times to ensure that Plaintiffs will not be civilly penalized for their inability to comply with SB27, until after ODH issues the necessary forms. Despite repeated attempts for any assurance, the Attorney General has refused to give any, necessitating this action.

**F.     Penalties for Noncompliance with SB27**

71.     Failure to comply with SB27 subjects Plaintiffs and their physicians to significant penalties.

72.     A knowing violation of R.C. 3726.02, 3726.05, 3726.10, or 3726.11 is a first-degree misdemeanor. R.C. 3726.99.

73.     Although SB27 suspends criminal penalties until ODH has adopted rules, the bill does not stay any noncriminal sanctions. There are severe noncriminal penalties that can apply as soon as SB27 takes effect on April 6, before ODH adopts rules.

74.     A physician who provides an abortion without first obtaining the patient's written certification that they have received the SB27-required notification form (and consent form, if applicable) would be subject to disciplinary action, including having their medical license limited, suspended, or revoked. R.C. 2317.56(G)(2), 4731.22(B)(21) and (23). The Medical Board may also impose a civil penalty up to $20,000. R.C. 4731.225(B). The threat of disciplinary action based on Plaintiff Dr. Liner's or Plaintiffs' other physicians' inability to comply with SB27, due to ODH's failure to adopt rules and forms, will deprive the physicians of their protected interests in pursuing their profession and providing reproductive health care, including procedural abortions, without due process.

Exhibit 1                                         000019

75.     Plaintiffs also face revocation of, suspension of, or refusal to renew their ASF licenses for a violation of SB27. Ohio Adm.Code 3701-83-05(C) and 3701-83-05.1(C)(2). They also face civil penalties of up to $250,000. Ohio Adm.Code 3701-83-05.1(C)(4) and 3701-83-05.2(B); *see also* R.C. 3702.32(D).

76.     In addition, ODH may order the ASF to cease operations and obtain an injunction enjoining the ASF from providing services. Ohio Adm.Code 3701-83-05.1; *see also* R.C. 3702.32(D)(3) and (E).

77.     If ODH finds that a physician in an ASF violated any law relating to informed consent, such as R.C. 2317.56, ODH must report that finding to the Medical Board. R.C. 3702.30(E)(2). The ASF is also subject to a civil penalty of up to $50,000 per patient for such violation. Ohio Adm.Code 3701-83-05.1(F) and 3701-83-05.2(F).

78.     For any violation of SB27's reporting requirement, the director of ODH may "apply to the court of common pleas for temporary or permanent injunctions restraining a violation or threatened violation." R.C. 3701.79(J).

79.     The director of ODH may also "apply to the court of common pleas for temporary or permanent injunctions restraining a violation or threatened violation of the [abortion] rules" including the rules on the "[h]umane disposition of the product of human conception" and "[c]ounseling." R.C. 3701.341.

80.     Finally, a physician who violates the informed-consent requirements is liable in a civil action for compensatory and exemplary damages. R.C. 2317.56(G)(1). Plaintiffs may also be civilly liable as the employer or other principal of their physicians. R.C. 2317.56(H)(3).

Exhibit 1                                                          000020

### G.    S.B. 27 Irreparably Harms Plaintiffs and Their Patients

81.    In light of these severe penalties and consequences, Plaintiffs and their physicians will be forced to stop all procedural abortions, absent an injunction from this Court.[9]

82.    ODH's failure to adopt rules in the three months leading up to SB27's effective date will amount to a ban on all procedural abortions in Ohio. As a result of ODH's inaction, many Ohioans, Plaintiffs' patients, will be deprived of their constitutional right to abortion. In addition, Plaintiffs will be deprived of their rights to substantive and procedural due process.

83.    A ban on procedural abortion would have a devastating impact on the lives of individuals who need access to abortion in Ohio.

84.    Approximately one in four women in this country will have an abortion by age 45. A majority of those having abortions have at least one child. Approximately 50 percent of abortion patients have a household income at or below the federal poverty level, and another 25 percent have incomes from 100 to 199 percent of the federal poverty level.[10]

85.    Legal abortion is one of the safest medical procedures in the United States and is substantially safer than continuing a pregnancy through to childbirth. The risk of death associated with childbirth is approximately 12 times higher than that associated with abortion, and every pregnancy-related complication is more common among women giving birth than among those

---

[9] Ohio law requires patients to make a separate trip to the health center to receive certain state-mandated information prior to their abortion. *See* R.C. 2317.56(B). But because of demand for appointments and scheduling challenges, these appointments may be scheduled about a week apart. As a result, Plaintiffs may be forced to stop making appointments well ahead of the April 6 effective date, unless this Court grants a restraining order.

[10] *See* Rachel K. Jones & Jenna Jerman, *Population Group Abortion Rates and Lifetime Incidence of Abortion: United States, 2008–2014*, 107 Am. Journal of Pub. Health 1904, 1907 (2017), *available at* https://doi.org/10.2105/AJPH.2017.304042. For a family of three, the federal poverty level is $21,960. *See* U.S. Dept. of Health & Human Servs., *Federal Poverty Level (FPL)*, https://www.healthcare.gov/glossary/ federal-poverty-level-fpl/ (last accessed Feb. 25, 2021).

Exhibit 1                                                                                          000021

having abortions.[11] Although abortion is significantly safer than continuing pregnancy through childbirth, the risks associated with abortion increase as pregnancy advances.

86.    Even for someone who is otherwise healthy and has an uncomplicated pregnancy, carrying that pregnancy to term and giving birth poses serious medical risk and can have long-term medical and physical consequences. These risks are greater for individuals with a medical condition caused or exacerbated by pregnancy and/or for some who learn that the fetus has been diagnosed with a severe or lethal anomaly.

87.    If an individual is forced to continue a pregnancy against their will, it can pose a risk to their physical, mental, and emotional health, as well as to the stability and wellbeing of their family, including existing children.

88.    A child can place economic and emotional strain on a family and may interfere with an individual's life goals. As most patients who seek abortion already have at least one child, families must consider how an additional child will impact their ability to care for the children they already have.

89.    Pregnancy, childbirth, and an additional child may exacerbate an already difficult situation for those who have suffered trauma, such as sexual assault or domestic violence.

90.    A ban on procedural abortion will have a disproportionate impact on the lives of Black people, other people of color, and people with low incomes in Ohio.[12] Recent ODH statistics

---

[11] Natl. Academies of Sciences, Eng. & Medicine, *supra* note 1, at 74–75.

[12] In 2019, Black people made up only 13.4 percent of Ohio's population but nearly 46 percent of people who obtained abortions in Ohio. *See* ODH, Induced Abortions in Ohio, 2019, *supra* note 3, at 3; U.S. Census Bureau, *Quick Facts: Ohio*, https://www.census.gov/quickfacts/oh (last accessed Feb. 23, 2021).

show that Black women are 2.5 times more likely than white women to die of causes related to pregnancy.[13]

91.     Being forced to stop providing procedural abortions will also irreparably harm Plaintiffs. If Plaintiffs are forced to stop providing procedural abortions, this will also have a detrimental impact on their physicians and other staff, as well as on Plaintiffs themselves. Although Plaintiffs could continue to provide medication abortion, because the majority of abortions provided in Ohio are procedural abortions, some Plaintiffs would have to close their ASFs. All Plaintiffs would need to terminate or furlough a significant number of staff—who, as a result, would likely seek employment elsewhere. A reduction in force would make it difficult for Plaintiffs to resume normal operations even if they were ultimately able to resume procedural abortion services. And even supposing Plaintiffs can survive the pendency of this litigation without having to close their doors, they cannot repair the damage to their reputation in the community as trusted providers of reproductive health care, including abortions. Many of Plaintiffs' physicians and staff have committed their professional careers to providing the full range of reproductive health care—of which procedural abortion is an essential part. Having to abruptly stop providing this necessary health care will be extremely damaging to them.

### CLAIMS FOR RELIEF

### COUNT I — Substantive Due Process (Plaintiffs' Patients)

92.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 91.

93.     By requiring Plaintiffs to act in accordance with ODH rules and to use ODH-prescribed forms that do not exist in order to provide procedural abortions, SB27 operates as a ban

---

[13] ODH, A Report on Pregnancy-Associated Deaths in Ohio 2008–2016, at 19 (2019), https://bit.ly/3uZraej.

Exhibit 1                                                           000023

on all procedural abortion, and thus violates Ohioans' right to abortion as guaranteed under Article I, Sections 1 & 16 of the Ohio Constitution.

94.     If SB27 is allowed to take effect, Plaintiffs' patients will be subject to irreparable harm for which no adequate remedy at law exists by preventing Plaintiffs' patients from obtaining a procedural abortion in Ohio, thereby causing them to suffer significant constitutional, medical, emotional, and other harm.

## COUNT II — Substantive Due Process (Plaintiffs)

95.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 91.

96.     By requiring Plaintiffs to comply with SB27 despite compliance being impossible—thereby preventing Plaintiffs from providing procedural abortion, operating their businesses, and pursuing their professions—SB27 is fundamentally irrational and arbitrary and violates substantive due process under Article I, Sections 1 & 16 of the Ohio Constitution.

97.     If SB27 is allowed to take effect, Plaintiffs will be subject to irreparable harm for which no adequate remedy at law exists by preventing Plaintiffs from providing procedural abortion, thereby causing them to suffer significant constitutional and other harm.

## COUNT III — Procedural Due Process

98.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 91.

99.     By requiring Plaintiffs to comply with SB27 despite compliance being impossible—thereby preventing Plaintiffs from providing procedural abortion, operating their businesses, and pursuing their professions—SB27 violates their right to procedural due process under Article I, Sections 1 & 16 of the Ohio Constitution.

Exhibit 1                                                                 000024

100.     If SB27 is allowed to take effect, Plaintiffs will be subject to irreparable harm for which no adequate remedy at law exists by being deprived of their liberty and property interests without due process, thereby causing them to suffer significant constitutional and other harm.

## COUNT IV — Equal Protection

101.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 91.

102.     By arbitrarily and irrationally singling out tissue from a procedural abortion, and treating tissue from procedural abortion differently than tissue from miscarriage, with no adequate justification, SB27 violates Plaintiffs' and their patients' right to equal protection under Article I, Section 2 of the Ohio Constitution.

103.     If SB27 is allowed to take effect, Plaintiffs and their patients will be subject to irreparable harm for which no adequate remedy at law exists by depriving them of equal protection of the laws, thereby causing them to suffer significant constitutional, medical, emotional, and other harm.

## COUNT V — Declaratory Judgment

104.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 91.

105.     A real controversy exists between the parties, the controversy is justiciable, and speedy relief is necessary to preserve the rights of the parties. Plaintiffs are affected by ODH's failure to adopt rules and forms or to provide assurances that Plaintiffs will not be penalized, as set forth herein. In addition, Plaintiffs are unconstitutionally deprived of their rights to due process and equal protection.

Exhibit 1                                                                 000025

106. The rights, status, and other legal relations of Plaintiffs are uncertain and insecure, and the entry of a declaratory judgment by this Court will terminate the uncertainty and controversy that has given rise to the action.

107. Pursuant to R.C. 2721.01, et seq., Plaintiffs request that the Court find and issue a declaration that:

      a. SB27 violates Article I, Sections 1 & 16 of the Ohio Constitution because it operates as a ban on all procedural abortion due to the impossibility of compliance.

      b. SB27 violates Article I, Sections 1 & 16 of the Ohio Constitution because it requires Plaintiffs to comply with SB27 despite that the ODH-prescribed rules and forms necessary to comply do not exist.

      c. SB27 violates Article I, Section 2 of the Ohio Constitution because it arbitrarily and irrationally singles out tissue from a procedural abortion and treats such tissue differently than tissue from miscarriage, with no adequate justification.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A. To immediately issue a temporary restraining order followed by a preliminary injunction, and later a permanent injunction, restraining Defendants, their employees, agents, and successors in office from enforcing SB27.

B. To enter a judgment declaring that SB27 violates the Ohio Constitution.

C. To award Plaintiffs their fees and costs.

D. To grant such other and further relief as the Court deems just and proper.

Dated: March 9, 2021

Respectfully submitted,

B. Jessie Hill #0074770
Freda J. Levenson #0045916
American Civil Liberties Union of Ohio
Foundation, Inc.
4506 Chester Ave.
Cleveland, OH 44103
(216) 368-0553 (Hill)
(614) 586-1972 x125 (Levenson)
(614) 586-1974 (fax)
bjh11@cwru.edu
flevenson@acluohio.org
*Counsel for Plaintiffs Preterm-Cleveland,
Women's Med Group Professional
Corporation, Northeast Ohio Women's
Center LLC*

Jennifer Dalven* PHV #23858
Rachel Reeves* PHV #23855
Clara Spera* PHV #23851
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
(212) 549-2650 (fax)
jdalven@aclu.org
rreeves@aclu.org
cspera@aclu.org
*Counsel for Plaintiffs Preterm-Cleveland,
Women's Med Group Professional
Corporation Northeast Ohio Women's
Center LLC*

/s/ Maithreyi Ratakonda
Maithreyi Ratakonda* PHV #23846
*Trial Attorney*
Planned Parenthood Federation of America
123 William Street, Floor 9
New York, NY 10038
(212) 261-4405
(212) 261-4405 (fax)
mai.ratakonda@ppfa.org
*Counsel for Plaintiffs Planned Parenthood
Southwest Ohio Region, Planned
Parenthood of Greater Ohio, and Sharon
Liner, M.D.*

Fanon A. Rucker #0066880
The Cochran Firm
119 E. Court St., Suite 102
Cincinnati, OH 45202
(513) 381-4878
(513) 381-7922 (fax)
frucker@cochranohio.com
*Counsel for Plaintiffs Planned Parenthood
Southwest Ohio Region, Planned
Parenthood of Greater Ohio, and Sharon
Liner, M.D.*

Richard Muniz* PHV #23847
Planned Parenthood Federation of America
1110 Vermont Ave. NW, Suite 300
Washington, DC 20005
(202) 973-4997
(202) 973-4997 (fax)
richard.muniz@ppfa.org
*Counsel for Plaintiffs Planned Parenthood
Southwest Ohio Region, Planned
Parenthood of Greater Ohio, and Sharon
Liner, M.D.*

*Application for *pro hac vice* in this Court
forthcoming

Exhibit 1                                                    000027

### CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2021, the foregoing was electronically filed via the Court's e-filing system. I further certify that a copy of the foregoing was served via electronic mail upon counsel for the following parties:

**OHIO DEPARTMENT OF HEALTH**
Email: ara.mekhijian@ohioattorneygeneral.gov

**STEPHANIE MCCLOUD**
Ohio Department of Health Director
Email: ara.mekhijian@ohioattorneygeneral.gov

**STATE MEDICAL BOARD OF OHIO**
Email: ara.mekhijian@ohioattorneygeneral.gov

**JOSEPH T. DETERS**
Hamilton County Prosecutor
Email: Kathy.Bailey@hcpros.org

**ANDREW W. GARTH**
Cincinnati City Solicitor
Email: kevin.tidd@cincinnati-oh.org
Email: Jacklyn.martin@cincinnati-oh.org

**G. GARY TYACK**
Franklin County Prosecutor
Email: jhummer@franklincountyohio.gov

**ZACH KLEIN**
Columbus City Attorney
Email: rncoglianese@columbus.gov
Email: ksaukerman@columbus.gov

**MICHAEL C. O'MALLEY**
Cuyahoga County Prosecutor
Email: dlambert@prosecutor.cuyahogacounty.us

**BARBARA A. LANGHENRY**
Cleveland Director of Law
Email: eboop@city.cleveland.oh.us
Email: blanghenry@city.cleveland.oh.us

**ROSS CIRINCIONE**
Bedford Heights Director of Law
Email: rossc@bedfordheights.gov

**MATHIAS HECK, JR.**
Montgomery County Prosecutor
Email: heckm@mcohio.org
Email: Barrentinw@mcohio.org

**THEODORE A. HAMER**
Kettering Director of Law
Email: Theodore.Hamer@ketteringoh.org

**SHERRI BEVAN WALSH**
Summit County Prosecutor
Email: galonski@prosecutor.summitoh.net
Email: mevans@prosecutor.summitoh.net

**JANET CIOTOLA**
Cuyahoga Falls Director of Law
Email: ciotola@cityofcf.com

Exhibit 1　　　　　000028

I further certify that counsel for Plaintiffs has filed a Written Request for Service form requesting that a copy of the foregoing to be served via regular mail service upon the following parties:

**BARBARA A. LANGHENRY**
Cleveland Director of Law
601 Lakeside Ave., Room 106
Cleveland, OH 44114

**ROSS CIRINCIONE**
Bedford Heights Director of Law
5661 Perkins Road
Bedford Heights, OH 44146

*/s/ Maithreyi Ratakonda*
Maithreyi Ratakonda, PHV #23846

Exhibit 1                                                                                    000029